Bouldin, J.
This is an original application to this court, by Wm. G. Robinson of Oswego, in the State of New York, for a writ of mandamus to the second auditor of ‘the State, to compel him to transfer on the books of his office, to said Robinson, certain bonds of the State •of Virginia issued to the Kanawha Board of the James River and Kanawha Company, under the 9th section of *320 the act of March 23d, 1860, amountiug to $18,000 in the aggregate, and more particularly described in the and also, to fund the same under act of 30, 1871, commonly designated “the funding act.”
The bonds are all filed with the petition; and it is admitted in writing by the parties, that all of them were duly issued and delivered by the State of Virginia, to said Kanawha Board, under the 9th section of the act aforesaid; that they came to the hands of the petitioner by proper assignment; and that the powers of attorney to transfer the same, referred to in the petition, are duly executed and attested.
It is further agreed, that said bonds and powers of attorney were in the early part of the month of December, 1871, (the second auditor says about the 2d,) presented to Asa Rogers, then and now the second auditor of the State of Virginia, to be transferred and funded under the act aforesaid of March 30th, 1871.
The auditor refused either to transfer or fund the bonds, assigning as his only reason for the refusal, “that the same was not funded on account of the provisions contained in the act of March 18th, 1862,” being an act of the Richmond government during the late war. The issue by the State, and the assignment to the petitioner, being all conceded to be “duly” and “properly” made, and the bonds, with the powers of attorney duly executed, having been regularly presented to the second auditor in December 1871, to be properly transferred and funded, the question, and only question before us, is, whether the act of assembly referred to by him, constituted a valid objection to the petitioner’s demand ? Did that act justify the second auditor in refusing to make the transfer and to fund the debt ? This is the only question.
*321 By the general laws of this State existing when these bonds were issued by the State of Virginia, and when they came to the hand of the petitioner, it was the duty of the second auditor, on the presentation to him of these bonds by the petitioner, with proper power of attorney authorizing the transfer of the bonds to him as the holder, to have the transfer made; and such thence hitherto hath been and still is the law of Virginia. See Code 1860, pp 261-5, ch. 44, §§ 23, 24, 25, &c., Code 1873, pp. 407-8, ch. 42, §§ 27, 28, 29, &c.
In addition to this general law of the State she contracted on the face of these bonds, with the person or persons to whom they might be issued, aud with all persons who might become holders thereof, that they should be transferable on the books of. the second auditor, by appearance in person or by attorney; thus making the general law of the land a part of the contract in express terms on the face of each boud. The language on the face of each certificate or bond is as follows: “This certificate is-transferable on'the books of the second auditor, by appearauce in person or by attorney.” The right thus to appear in person or by attorney, and to transfer the bond to another, is absolutely essential to its beneficial use by the holder. Without such power, its convertibility into money would be destroyed; aud this essential right being secured to the holder by the contract of the State, the obligation of that contract cannot be impaired by subsequent legislation. If, then, the act of the Richmond government of 'March 18, 1862, be a statute of the State of Virginia*' and if the second auditor be right in supposing that" the statute prohibits him from allowing any transfer, either in person or by attorney, of bonds legally issued under -the * act of September 23d, 1860, and in the hands of bona fide, holders prior to the passage of the prohibitory act, *322 the latter act would certainly deprive the holder of the bond of a most valuable and important element of his contract, and would therefore impair its obligation. On that account and to that extent the act, if on our statute book, is unconstitutional and void, and constitutes no answer to the petitioner’s demand to have his bonds transferred and funded.
But, is the prohibitory portion of the act of March 18, 1862,- noto a law of Virginia, conceding it to have been a law and to be constitutional? I think not. It might, perhaps, be contended, and with much show of reason, under the ruling of this court in the cases of Commonwealth v. Chalkley, 20 Gratt. 404, and De Roths child v. Auditor, 22 Gratt. 41, that no legislative act of the Richmond government, during the war, could in any wise affect the obligations of this State, issued, and the rights of her creditors beyond the State vested, anterior to the war. But, waiving that question altogether, I am of opinion that the portion of the act referred to is, for other reasons which 'will be given, no longer a part of the law of Virginia. The act itself did not undertake wholly to repudiate the obligations of the State therein referred to; but, treating them as valid, merely interposed a temporary obstruction to their transfer. It was ■evidently a quasi war measure, intended to bolster the resources of the government, and was, on its face, temporary in its character; and so far as my researches enable me to speak on the subject, and they have been prosecuted with some care, it has not been recognized, nor even referred to, in any act passed since the war in relation to the public debt. In none of our statutes, making provision for the public debt siuce the war, has there been any discrimination against the bonds issued to the Kanawha Board. Beginning with the act entitled “an act to provide for funding the interest upon the public *323 debt,” passed March 2d, 1866, we find that its provisions extend to all holders of the bonds of the State issued before the 17th day of April 1861, without exception; making no discrimination against the bonds lawfully issued under the act aforesaid of March 23d, 1860. Sess. Acts 1865-6, ch. 9, p. 79. Nor is there any such discrimination to be found in any of the subsequent statutes. See Act March 21, 1867. Sess. Acts 1866-7, ch. 35, p. 805; Ibid. ch. 74, p. 877; Ibid. ch. 103, p. 904; and Sess. Acts 1871-2, ch. 166, p. 218. And in the joint resolution of the 7th January, 1873, “ in regard to the public debt,” “the holders of the bonds of the State of Virginia,” without exception, are invited to a conference with a committee of the general assembly. The holders of bonds regularly issued through the Kanawha Board were not excluded in the resolution, and in fact, these bonds constitute a part of the public debt as annually stated by the auditor and published with the acts of assembly. In addition to all this, the funding act of March 30th, 1871, itself makes no such discrimination; on the contrary, it gives in express terms the privilege of funding to “the owners of any of the bonds, stocks or interest certificates heretofore issued by the State, which are recognized by its constitution and laws as legal; except the jive per centum dollar bonds and what are known as sterling bonds.” There is no exception of bonds issued through the “ Kanawha Board.”
Under these circumstances, I am of opinion, that the temporary war measure of March 18, 1862, if ever in force at all after the war, has been long since repealed by implication, and that there was no statute in force on or about the 2d of December 1871, or since, to interfere with the petitioner’s right to have the bonds in his petition mentioned, transferred and funded under the act of March 30th, 1871, as amended by the repealing *324 clause of the act of March 7, 1872, entitled “ an act declaring what shall be received in payment of taxes or other demands of the State,” and as now in force.
I am further of opinion, upon the principles established by this court in the cases of Antoni v. Wright, sh’ff., and Wright, sh’ff. v. Smith, both on principle and authority, that the writ of mandamus is the proper remedy in this case; the duty of the second auditor, under the act of assembly, being purely ministerial.
My opinion is that a peremptory writ of mandamus should be awarded, commanding the second auditor to allow the transfer to the petitioner of the several bonds filed with the petition to be made on his books, as prayed for in the petition; and to fund the same under the provisions of the act of March 30th, 1871, as amended by the repealing clause of the act of March 7, 1872, entitled “ an act declaring what shall be received in payment of taxes or other demands of the State,” and as now in force.
The other judges concurred in the opinion of Bouldin, J.
PEREkPTORY MANDAMUS ISSUED.